## COLVIN *vs.* HOLBROOK.

Where the purchaser of real estate sold upon execution receives a certificate from the sheriff, and assigns the same to another, and the real estate sold is subsequently redeemed, by a junior judgment creditor of the defendant, the money paid by the redeeming creditor to the officer making the sale is paid to the use of the assignee of the certificate, who may sue therefor, in his own name, in an action for money had and received.

But where the sale is made by a deputy sheriff, and the money is paid to him, by the redeeming creditor, the deputy is not personally responsible to the assignee of the purchaser, for the non-payment of the money. The action should be brought against the sheriff.

ERROR to the Onondaga common pleas. The declaration in the court below was in assumpsit, upon the common counts for money paid, money had and received, and upon an account stated. Plea, the general issue. On the trial the plaintiff introduced in evidence an exemplified copy of a judgment record in favor of Cyrel H. Brackett, against Oscar B. Brackett, by which it appeared that judgment was rendered in the supreme court on the 21st day of October, 1836, for $2115,72 damages and costs. The plaintiff's counsel also introduced in evidence an exemplified copy of a *fi. fa.*, issued upon said judgment to the sheriff of Onondaga county, tested the 13th day of July, 1838, returnable the 3d Monday of October, 1838, endorsed to levy $2115,72, with interest from October 21st, 1836, also endorsed as received July 17, 1838, by C. A. Holbrook, deputy sheriff, a return made by the said deputy on the 4th of May, 1839, that he had collected, besides his fees, $1356,56, and *nulla bona* as to balance of execution and the same filed May 15th, 1839. The counsel for the plaintiff then introduced in evidence a sheriff's certificate, taken from the files of the clerk's office of Onondaga county, signed E. L. Phillips, sheriff, C. A. Holbrook, deputy sheriff, dated May 4, 1839, by which certificate it appeared that by virtue of the execution above mentioned, a sale of the real estate of Oscar B. Brackett, defendant, was had on the

---

Colvin *v.* Holbrook.

---

said 4th of May, 1839 ; that the following, among other pieces of lands were sold at said sale, to wit, lots 76, 77, 92, 93, Onondaga reservation, for $21, lot 90 for $15, lot 87, Cicero, for $10, lot 88, Clay, for $50, and lot 33, village of Salina, for $10. That Cyrel H. Brackett, the plaintiff in the execution, became the purchaser of each and all of the pieces sold at said sale. The counsel for the plaintiff also introduced in evidence a duplicate of said sheriff's certificate, on the back of which was an assignment in the words and figures following, to wit : " For value received of David S. Colvin, I hereby sell, assign and transfer to him the foregoing certificate, and authorize the sheriff to give him a deed.   Nov. 11, 1839.      C. H. BRACKETT."

Which assignment was duly acknowledged before a commissioner of deeds.

The plaintiff's counsel then introduced an exemplified copy of a judgment record in the supreme court, in favor of Julius J. Wood, plaintiff, against Oscar B. Brackett, defendant.   Judgment rendered July 22d, 1840, for $584 debt, $11,88 damages and costs.   The counsel for the defendant then admitted that the said Julius J. Wood, on the 4th of August, A. D. 1840, presented and delivered to the said Charles A. Holbrook, a copy of the docket of the judgment last named, and also his affidavit of the amount due on said judgment, and that the said Wood claimed to redeem the lots above specified from the sale so as aforesaid made.   The counsel for the plaintiff then proved that Elihu L. Phillips was sheriff of Onondaga county in 1838, 1839, 1840, and that the said Holbrook was deputy sheriff under Phillips.   That Julius J. Wood, by virtue of the judgment he held against Oscar B. Brackett, redeemed the lots above mentioned on the 4th of August, 1840, from the sale made by said Holbrook on the judgment in favor of Cyrel H. Brackett, against Oscar B. Brackett, and on such redemption paid to Holbrook the sum of $116, and that Holbrook gave a deed to Wood of said lots on the 16th of December, 1840, and that the money that Holbrook received on said redemption had not been paid.   The counsel for the defendant admitted that on the 19th of November, a few days before the commencement of

this suit, the money paid to the said defendant on the redemption was demanded of the defendant in behalf of the plaintiff, and the duplicate certificate and assignment, and proof of assignment of said certificate at the same time shown him, but Holbrook did not pay the same. The counsel for the plaintiff then rested his cause. The counsel for the defendant moved for a nonsuit on the following grounds: First, that the action could not be maintained in the name of the plaintiff, but only in the name of the purchaser. Second, that the plaintiff could not recover on the common counts. Third, that the action would not lie against the defendant, he being a deputy sheriff, and having received the money as such; whereupon the court nonsuited the plaintiff, and he brought this writ of error.

*B. D. Noxon,* for the plaintiff in error.

*J. G. Forbes,* for the defendant in error.

*By the Court,* GRIDLEY; J. We do not doubt from a comparison of the 45th with the 51st section of the act concerning "executions and the duties of officers thereon," (2 *R. S.* 370, 371,) that the money paid to the defendant by the redeeming creditor, was paid to the use of the plaintiff as assignee of the purchaser. We regard the omission of the words "his personal representatives or assigns," after the word "purchaser," in section 45, as accidental and not altering the rights of the parties. If it were paid to the use of the plaintiff, we see no legal objection to the plaintiff's right to maintain in his own name an action for money had and received, to recover the money, provided the action will lie against the defendant at all.

The defendant was a deputy of the sheriff of Onondaga, and received the money in behalf of the sheriff, and held it merely as the agent of the sheriff, who, in contemplation of the law, possessed the money as a trustee for the person to whom it was due. The phrase in the 45th section, "officer who made such sale," does not mean the *individual person,* to the exclusion of

the sheriff, whose official act the sale is, by legal intendment deemed to be ; and therefore a redemption may be made of the sheriff or of his deputy, who as his agent, actually made the sale. The deputy represents the sheriff; and it is the sheriff who makes the sale, and receives and holds the money. And in this case, the refusal of the defendant to pay over the money on demand, was the refusal of the sheriff, and rendered him responsible for the neglect of his official duty. "The law contemplates the most full and perfect responsibility on the part of the sheriff, for every act and omission of his deputy in his official character ; and to protect himself against a liability so comprehensive, he takes a bond of his deputy with ample security for his indemnity.

In this action the attempt is to make the deputy personally responsible for the non-payment of the money upon the demand of the plaintiff. The case of *Tuttle* v. *Love*, (7 *John.* 471,) is a direct authority against the right to sustain this action, unless the deputy had bound himself by an express promise. The court in that case adopted the rule laid down by the court of king's bench in *Cameron* v. *Reynolds*, (*Cowp.* 403,) where it was held that an action did not lie against an under-sheriff for refusing to execute a bill of sale to the plaintiff under a fieri facias, Lord Mansfield saying: "It is an action for breach of duty in the office of sheriff. Whenever that is the case, the action must be against the high sheriff, and if it proceed from the default of the under-sheriff or bailiff, that is a matter between them and the high sheriff." In 12 *Mass. Rep.* 449, it was held that the deputy of the sheriff was liable to a third person for a mere neglect of duty, and the authority of the case of *Cameron* v. *Reynolds* was held inapplicable, upon the alleged ground that in England the under-sheriff is not recognized by the law as *an officer*. Whereas in Massachusetts the deputy of the sheriff *was* recognized as an officer, and his qualifications were declared by the statute. If we were to choose whether we would follow an authority of our own courts, or an opposite one from the courts of another state, we could hardly hesitate, however respectable the latter might be. In this case,

Colvin *v.* Holbrook.

however, the reason assigned by the court in Massachusetts for departing from the rule laid down by Lord Mansfield, is most unfortunate, and exhibits a want of accuracy with which that court is not often chargeable. The supposition that in England the under-sheriff is not an officer, and is not recognized as such by law, is an error which the slightest examination would have corrected. The under-sheriff in England is an officer more independent of his principal than our deputies are in this state. (*See* 7 *T. R.* 113; 1 *Bing.* 367; 8 *Moore,* 498; 14 *Petersdorff,* 618, *note* *; 3 *Geo.* 1, *ch.* 15, § 10, 623, *and from* 617 *to* 630. *See also* 6 *Jac. Law Dict.* 83, *Stat.* 27th *Eliz. ch.* 12, *and* 3d *Geo.* 1, *ch.* 15, § 19, *which prescribes the oath of the under-sheriff.*) A better reason for repudiating the authority of the case of *Cameron* v. *Reynolds,* in the state of Massachusetts, may be found in certain statutory provisions making the deputy sheriff in that state liable for the non-payment of moneys collected on execution. 8 *Cowen,* 212, is also an authority in accordance with the rule laid down in *Tuttle* v. *Love* and *Cameron* v. *Reynolds.*

We regard that rule as being in strict consonance with the principle which holds servants responsible for tortious acts, whether done by authority of their masters or not, but exempts them from any liability to third persons, for mere *non-feasance* or *non-performance of a duty.* Lord Holt says in 12 *Modern,* 488, "A servant or a deputy, as such, cannot be charged for neglect, but the principal only shall be charged for it; but for a misfeasance, an action will lie against the servant or deputy, not as such deputy or servant, but as *a wrongdoer;*" "if a bailiff who has a warrant from the sheriff to execute a writ, suffer his prisoner to escape by neglect, the sheriff shall be charged, and not the bailiff; but if the bailiff turn the prisoner loose, the action may be brought against the bailiff, for he is a wrongdoer." (*See to the same effect Bell* v. *Caterbee, Sayer,* 41; *Roll. Abr.* 94, *pl.* 5; 1 *Vin. Abr.* 573; 1 *Leon.* 146; *Doctor & Student, p.* 280, *ch.* 42; 2 *Bos. & Pull.* 223; *Ld. Raym.* 655. *See also Denny* v. *Manhattan Co.* 2 *Denio,* 115.)

There are some deputies or subordinate officers who are re-

Colvin v. Holbrook.

sponsible for negligence personally, but in such cases the principal is not liable. Such is the case of the postmaster general, commissioners of customs, &c. (2 *Salk.* 240. 4 *T. R.* 66. 1 *Ld. Raym.* 646.) This principle, however, has no application to sheriffs, who are liable for the acts of their subordinates. A plausible argument has been pressed upon our consideration drawn from the liability of agents, for moneys received in that capacity belonging to third persons, before such moneys have been paid over. It may be answered that this rule itself is laid down with some qualifications, " for it has been held that an action will not lie against a mere collector or receiver, for the purpose of trying a right in the principal, even though he had not paid over the money." (*See Buller's N. P.* 133 ; 4 *Burr.* 1985 ; 4 *T. R.* 555.) We are of the opinion that the argument derived from this analogy cannot aid the plaintiff in this case, for several reasons. 1. Whenever the non-payment of money by a deputy of the sheriff is referable, as here, to a breach of the official duty of the sheriff, to hold the defendant personally liable, would violate a principle which we believe to be established upon authority. 2. This view of the case is fortified by the absence even of a single instance in our courts of an action brought against a deputy sheriff for the non-payment of moneys collected upon execution, or for any other official default, resting in non-feasance alone ; and by the absence of any necessity for holding the deputy liable, in the full and complete responsibility of the high sheriff himself. 3. Again ; as the sheriff is the party in whom the law vests the legal possession of the money as a trustee for the true owners, there is a peculiar fitness and propriety in requiring the action to be brought against him, as the representative of the interests of all such as prefer any claim to it. The possession is in law the possession of the sheriff, and it is between him and the plaintiff that the only privity of interest exists. The sheriff, as trustee, is bound to defend the possession of the money against all unlawful claims, for the benefit of the true owner ; and if the plaintiff should recover this money of the deputy, that recovery would not shield the sheriff in an action brought against him by some one who

should prove, on the trial, a paramount right to the money. It may be answered that if a better claim can be proved in any other than the plaintiff, that will be a good defence for the deputy. That may be true, and still it is wrong, that upon him who is the mere depositary of the money for the sheriff, should be cast the burden and expense of the litigation, instead of the sheriff, upon whom the law devolves it as the representative of the true owners. It may be said again, there is no proof that there is any defence against the plaintiff's claim. That, I humbly conceive, is begging the question; the very objection is, that the action should not be brought against the deputy at all, for the reason that if there be a defence, it would devolve on him the burden of making it. Again; the deputy may be the only witness to an important fact for the sheriff, and by making him a party, the sheriff or the true owner may be a sufferer by the loss of material testimony.

Judgment affirmed.

